UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CV580

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED ORDER** |
| | ) | |
| REAL PROPERTY LOCATED AT 6124 | ) | |
| MARY LANE DRIVE, SAN DIEGO, | ) | |
| CALIFORNIA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before this Court on Plaintiff's Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment (Document #22) and Claimant's Motion for Summary Judgment. (Document #24). There does not appear to be any material issue of fact, and therefore, this case is properly decided on summary judgment. Plaintiff's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

In 1997, Claimant Ann Munson ("Ms. Munson") purchased the property at 6124 Mary Lane ("the property"). Her son, James Munson ("Mr. Munson"), moved into the house and, along with others, began a conspiracy to bring marijuana into the United States, ship it to Charlotte, North Carolina, and launder the drug proceeds.

In 1999, Ms. Munson quitclaimed the house to Mr. Munson and gifted the equity to him.

1

Mr. Munson paid her back the money she used on the original down payment and obtained new financing with the house in his name.

Illegal drug-related activity at the house where Mr. Munson lived until his arrest in May 2001, as shown by telephone calls made from the house to members of the conspiracy, took place from October 1997 thought at least September 1999. In May 2001, Mr. Munson was indicted in Charlotte on drug and money laundering charges. On January 16, 2002, Mr. Munson executed and recorded a deed conveying 6124 Mary Lane Drive to himself and Ms. Munson. Ms. Munson and Mr. Munson are currently co-owners of the property and after being convicted in May 2003, Mr. Munson is in prison.

## ANALYSIS

Summary judgment is proper "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine

issue for trial." Fed. R. C. P. 56(e); *Anderson*, 477 U.S. at 250. This standard is particularly important where the nonmoving party bears the burden of proof. *Hughes v. Bedsole*, 48 F.3d. 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. *Austin v. Clark Equip. Co.*, 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." *Reeves*, 530 U.S. at 151.

Civil forfeiture allows the government to take property used but "[a]n innocent owner's interest in the property shall not be forfeited." 18 U.S.C.A. § 983 (d)(1) (2007). Under the "relation-back" subsections of the civil forfeiture statutes, the government's interest in the property vested "upon the commission of the act giving rise to forfeiture." 18 U.S.C. § 981(f); 21 U.S.C. §881(h). The government's forfeiture interest in 6124 Mary Lane Drive therefore vested no later than October 1997, when, as James Munson admitted at sentencing, he and others were packaging marijuana at the house. In this case, Ms. Munson herself has also admitted that the property was used in drug trafficking, and is, therefore, subject to civil forfeiture. Therefore, Ms. Munson may only retain whatever interest she has in the property if she is an innocent owner under 18 U.S.C. § 983(d) (2007).

The conditions one must meet to be an innocent owner depend on whether the claimant's property interest was acquired before or after the illegal conduct giving rise to the forfeiture took place. Here, Ms. Munson clearly gave up her legal interest in existence at the time of the initial criminal activity at the property because she quitclaimed the deed to Mr. Munson in 1999. Any current ownership interest Ms. Munson has was acquired subsequent to that grant, which was after the illegal conduct took place. Thus, to be an innocent owner, Ms. Munson must meet the two conditions set forth in 18 U.S.C. § 983(d)(3). Under that provision, an "innocent owner" is an owner who "was a bona fide purchaser or seller for value" and "did not know and was reasonably without cause to believe that the property was subject to forfeiture." Id. at (d)(3)(A)(i) - (ii).

With enactment of a uniform innocent owner defense for civil forfeiture as part of the comprehensive "CAFRA" legislation in 2000, Congress superseded prior Supreme Court and

4

Fourth Circuit case law.  *See, e.g., United States v. A Parcel of Land (92 Buena Vista)*, 507 U.S. 111 (1993); *United States v. One 1985 Nissan 300ZX*, 889 F.2d 1317 (4th Cir. 1989) (*en banc*), overruling in part *United States v. $10,694.00*, 828 F.2d 233 (4th Cir. 1987).  More specifically, Congress made it clear in CAFRA that the government can now utilize the "relation-back" provisions of the civil forfeiture statutes to defeat third-party claims of innocent ownership which fail to satisfy either paragraph (2) or paragraph (3) of 18 U.S.C. § 983(d).  Together, these two paragraphs provide essentially the same two-prong test that previously applied only in criminal forfeiture cases under 21 U.S.C. § 853(n)(6)(a) and (b).  *See United States v. Hooper*, 29 F.3d 818, 823 (9th Cir. 2000) ("Congress has now eliminated the disparity between the two types of forfeiture"); *see generally* Stefan D. Cassella, "The Uniform Innocent Owner Defense to Civil Asset Forfeiture," 89 *Kentucky Law Journal 3* (2001).  Moreover, since the statutory language is now generally the same for civil and criminal forfeiture, both pre- and post-CAFRA judicial decisions under § 853(n)(6)(a)-(b) in criminal cases will apply as precedent for post-CAFRA civil cases under § 983(d)(2)-(3).  *Id.* at text accompanying nn. 97-112; *see also United States v. One 1996 Vector M12*, ___ F.Supp.2d. ___ , 2005 WL 3263325, at *4 (S.D. Ohio Dec. 1, 2005) (as to § 983(d)(3), noting that CAFRA lacks a definition of "bona fide purchaser of value" and that the courts have therefore turned to the definition of this term under § 853(n)(6)(b), which "includes all persons who give value . . . in an arm's-length transaction with the expectation that they would receive equivalent value in return").

Finally, in connection with determining the applicable law in this case, it is important to note 18 U.S.C. § 983(d)(6).  This paragraph defines the term "owner" to mean "a person with an ownership interest in the specific property sought to be forfeited . . . ."  § 983(d)(6)(a).  In

addition, it excludes from the category of owner "a person with only a general unsecured interest in, or claim against, the property or estate of another." § 983(d)(6)(b). For all civil forfeiture cases, therefore, Congress has precluded application of the criminal forfeiture holding in *United States v. Reckmeyer*, 836 F.2d 200 (4th Cir. 1987), that in some circumstances a general unsecured creditor may have a legal ownership interest in specific property and thus qualify as a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(b).

**I. Claimant is not a bona fide purchaser for value.**

In general, as to the first prong of the statutory test, the criminal forfeiture statutes have taken the concept of a bona fide purchaser for value "essentially from hornbook commercial law." *See United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991). As noted above, since the same general innocent owner defense is now found in the criminal and civil forfeiture statutes, Lavin and other criminal forfeiture cases construing this defense have precedential application to civil forfeiture cases involving the same issue. "The good-faith purchaser exception developed over time in order to promote finality in commercial transactions and thus to encourage purchases and to foster commerce. It does so by protecting the title of a purchaser who acquires property for valuable consideration and who, at the time of the purchase, is without notice that the seller lacks valid and transferable title in the property." *Id.* at 186. Determining if a purchaser is a bona fide purchaser ("BFP") is especially difficult in intra-familial conveyances because the parties are not "unrelated parties each acting in his and her own self interest." *United States v. 198 Training Field Road*, No. Civ.A. 02-11498-GAO, 2004 WL 1305875, at *2 (D. Mass. June 14, 2004). Therefore, courts have focused on whether the transaction was an

arm's-length transaction as a way to determine if a titleholder is a BFP. *See United States v. McHan*, 345 F.3d 262, 278 ("we cannot conclude that the district court clearly erred in finding that the agreements [between Charles and Martha McHan] were not made at arm's length and that they constituted a deliberate attempt by [Charles] to avoid the economic impact of forfeiture").

While the timing of the title transfer does suggest that Mr. Munson may have been engaging in a sham conveyance of the property to avoid forfeiture, it is sufficient to show that Ms. Munson cannot satisfy the BFP requirement under § 983(d)(3)(a)(i) because the conveyance was not an arm's-length transaction. Beside the fact that the deed itself states that it was a "GIFT-NO CONSIDERATION," there are myriad indications of the non-arm's-length nature of this transfer. In addition, claimant's execution of the note and deed of trust in January 2002, by which she presumably incurred a joint liability for this $240,000 debt, does not constitute giving value or make her a bona fide purchaser for value. *See United States v. Morgan*, No. CRIM.01-242-01, 2002 WL 922107, at *2 (E.D.Pa. 2002) (petitioner held not a bona fide purchaser where she "merely co-signed a loan with the understanding that the proceeds would go into accounts in her husband's name . . . without any promise of a return to her"). No party dealing at arm's length would take on this debt without receiving any of the funds taken from the house's equity.

**II. Claimant was not reasonably without cause to believe the property was subject to forfeiture.**

Even if claimant did qualify as a BFP, she does not satisfy the requirement of § 983 (d)(3)(a)(ii) that she "did not know and was reasonably without cause to believe that the property

7

was subject to forfeiture." The test is an objective one. *See In re Moffett, Zwerling, & Kemler, P.C.*, 846 F.Supp. 463, 472 (E.D.Va. 1994), *affirmed on consolidated appeal sub nom United States v. Moffitt, Zwerling, & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996), where the district court stated:

> Thus, the central question presented is whether the Law Firm was reasonably without cause to believe that the $103,800 in cash received from Covington was subject to forfeiture. In deciding this question, "the proper test to be applied under the statute is not merely whether the petitioner had knowledge of the forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subect to forfeiture. *United States v. Reckmeyer*, 836 F.2d 200, 204 (4th Cir. 1987). And this standard, significantly, is objective, not subjective. In other words, a genuinely-held belief that property is not subject to forfeiture is unavailing unless that belief was objectively reasonable in the circumstances. . . . Measured by this standard, the Law Firm's petition fails.

In other contexts such as bankruptcy, application of an objective test such as this one has included a duty to inquire, even apart from any issue of "willful blindness." *See In re Professional Investment Properties*, 955 F.2d 623, 627 (9th Cir. 1992) ("knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed").

In this case, Ms. Munson was present at the property when Mr. Munson was arrested on related drug charges in May of 2001, approximately eight months before she acquired her interest in the property in January of 2002. The indictment in the criminal case was a matter of public record and contained a notice of forfeiture that claimant could have read at any time. The indictment notice alleged that any criminal proceeds and facilitating property of "defendant(s)" and any substitute property, up to the value of the directly forfeitable property, was subject to forfeiture. In January 2002, since this information had long been readily available to claimant, she was not reasonably without cause to believe that 6124 Mary Lane Drive (or any other

8

property owned by Mr. Munson) was subject to forfeiture, regardless of whether she actually knew about the drug trafficking and money laundering that took place in connection with the house. On the undisputed facts, therefore, claimant cannot meet her burden of proof with regard to 18 U.S.C. §983(d)(3)(a)(i)-(ii), and the government is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED.

Signed: August 20, 2008

Graham C. Mullen
United States District Judge